IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOHN W. CALDWELL,**

**Plaintiff,**

**v.** **No. CIV 08-593 BB/KBM**

**UNITED STATES OF AMERICA,**

**Defendant.**

# MEMORANDUM OPINION IN SUPPORT OF ORDER OF DISMISSAL FOR LACK OF JURISDICTION

**THIS MATTER is before the Court on the United States of America's Motion to Dismiss [doc. 39]. The Court having considered all submissions of counsel, finds the Motion is supported by law and will be Granted.**

## I. *Legal Standard*

**The Government's Motion is for an order of dismissal pursuant to Federal Rule of Civil Procedure 12(b) or alternatively for a summary judgment pursuant to Rule 56.**

### (a) *Rule 12(b) Standard on Jurisdiction*

**In deciding a motion to dismiss, the Court generally must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). Where jurisdiction is challenged, however, the Court's function on a Rule 12(b)(6)**

**motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief might be granted."** ***Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Plaintiff must thus make a prima facie showing of jurisdiction. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). A claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1197 (10th Cir. 2003), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).**

**Generally, a district court may not consider any materials other than the allegations of the complaint in deciding a motion to dismiss; if the court does consider matters outside the pleadings, the motion to dismiss must be converted into a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005). However, as the Government has raised a jurisdictional issue and the Court must initially satisfy its jurisdiction, such materials may be considered for that purpose without turning the issue into a summary judgment proceeding. *Holt***

***v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).[1] Since the Court is considering this as a Rule 12 motion on jurisdiction, Plaintiff must make a prima facie case and the Court may consider the affidavits of Defendant without turning this into a summary judgment motion.[2] Even accepting Plaintiff's version of the facts, the FTCA does not waive sovereign immunity for such a claim and this Court therefore lacks jurisdiction of Plaintiff's claim.**

## II. *Facts*

**At approximately 2:00 in the afternoon of June 3, 2007, the recreational vehicle owned and driven by Plaintiff rear-ended a tractor-trailer owned by Knight Transportation on Interstate 10 between Las Cruces and Deming. The collision occurred about 365 feet east of mile marker 122 which is located approximately one and a half miles east of the I-10 checkpoint. Approximately 400 feet before the location of the accident, there is a sign that reads "U.S. Border Patrol Inspection Station 1½ Miles." The posted speed limit at the point of the accident was 75 miles per hour. Approximately 900 feet before the location of the accident there is a sign that reads "Reduced Speed Ahead."**

---

[1] If the jurisdictional claim is intertwined with the merits of the case by deriving from the same provision of the statute which creates the claim, then, the motion becomes one for summary judgment under Rule 56. *Id.* Here, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, does not create Plaintiff's cause of action but waives sovereign immunity which would bar Plaintiff's common law negligence claim in certain instances. *Black Hills Aviation v. United States*, 34 F.3d 968, 977 (10th Cir. 1994); *United States v. Browning*, 359 F.2d 937, 938 (10th Cir. 1966).

[2] Both parties cite depositions and affidavits and deposition testimony to establish the undisputed facts.

**Before the collision occurred, the U.S. Border Patrol ("USBP") agents staffing the I-10 checkpoint received a call to "be on the lookout" ("BOLO") for a certain tractor-trailer that allegedly was transporting contraband. After the BOLO alert was received, the traffic entering the I-10 checkpoint became moderate to heavy and gradually began to bottleneck at the exit ramp that diverts traffic from the highway to the checkpoint. Approximately a half hour before the accident, USBP Agent Fernando Contreras, the senior agent at the I-10 checkpoint, observed that the traffic was backing up onto the highway and decided to "flush" traffic or proceed "under green light" – *i.e.*, to suspend checkpoint operations temporarily and permit traffic to flow through the I-10 checkpoint.**

**At the time of the collision, traffic had backed up to mile marker 122 and was at a virtual standstill. Plaintiff's RV was traveling immediately behind the Knight tractor-trailer for at least a mile before the site of the collision. Being unable to stop, Plaintiff rear-ended the trailer. Senior Patrolman Johnny Vigil ("Officer Vigil") of the New Mexico State Police investigated the collision and concluded that Plaintiff was responsible for the collision due to driver inattention and because he was following too closely. Officer Vigil cited Plaintiff for following too closely; Plaintiff paid the citation.**

**The U.S. Customs and Border Patrol had directives governing Border Patrol checkpoint operations (attached to Agent Garth Rogers' Declaration as Ex. M). The memorandum from the Chief of the Office of Patrol dated November 2003 states:**

> **The attached directive addresses the critical need of checkpoint operations as they maximize the Border Patrol's mission in securing the Nation's borders against terrorists, smugglers of weapons of terror, other contraband, and illegal aliens. The directive will ensure consistency in checkpoint operations and enforcement nationwide. It fosters communication and intelligence sharing throughout CBP. This directive provides standards for existing checkpoints as well as guidelines for establishing additional checkpoints in the future.**

**The Guidelines also note that in addition to border security and contraband intervention, "safe operation of traffic checkpoint is of the utmost importance" so that "[n]either agents nor the traveling public should be subjected to hazards beyond those that are inherent in any Border Patrol operation or any other activity involving moving vehicles." (B.P.C.O.G. 6.13). The standards recognize that "[i]t is understood that the individual needs of each checkpoint will vary because of local conditions and differences in traffic flow." (B.P.C.O.G. 42.2). Thus, the Guidelines leave significant discretion to agents on implementing safety procedures:**

> **6.13.8. Operations should be suspended if conditions become such that either the Border Patrol Agents or the traveling public are in danger of being injured through an accident. A conscientious appraisal must be made as to whether operations should be discontinued. Error should be on the side of caution. It is better to suspend traffic check operations than to continue under conditions that could result in an accident or an injury. The decision as to whether traffic check operations should be terminated rests with the Chief Patrol Agents but may be delegated to Patrol Agents in Charge of the station or the supervisory Patrol Agents in charge of the shift.**

**B.P.C.O.G. 6.13.8 (emphasis added).**

**III. *Federal Tort Claims Act***

**The FTCA waived the Government's sovereign immunity protection by providing that the "United States shall be liable ... to tort claims in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, the Act does not apply to all Government activities and functions. The language of 28 U.S.C. § 2680(a) excepts from the waiver of sovereign immunity:**

> **(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused (emphasis added).**

**This is commonly known as the "discretionary function" exception to the FTCA. *See Daigle v. Shell Oil*, 972 F.2d 1527, 1537 (10th Cir. 1992).**

**Plaintiff argues "[d]ismissal is improper as the discretionary function does not apply to Plaintiff's claim." (Pl.'s Resp. p. 2). Only if the Court determines that the United States has waived its sovereign immunity under the FTCA, notwithstanding the discretionary function, does the question of whether the Government owes Plaintiff any duty arise. *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995). The application of the exception thus presents a threshold jurisdictional question. *Id.*, *Garcia v. United States Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008).**

**The discretionary function exception to FTCA waiver of sovereign immunity marks the boundary between the willingness of Congress to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals; if a discretionary function exception applies to challenged governmental conduct, the United States retains its sovereign immunity, and the district court lacks subject matter jurisdiction to hear the suit. *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997). In order to determine whether the discretionary function applies, the Supreme Court has set forth a two-part test. "Under that scheme, we determine (1) whether the action at issue was one of choice for the government employee, and (2) if the conduct involved such an element of judgment, whether that judgment is of the kind that the discretionary function was designed to shield." *Id.*, quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).**

**The first element requires that the Border Patrol agents exercised their discretion in establishing and operating the I-10 checkpoint. There is no dispute that the Border Patrol received a BOLO for a tractor-trailer rig possibly carrying contraband. Consistent with their core mission, the agents decided to attempt to apprehend that vehicle. About 30 minutes before the accident, Senior Agent Contreras decided traffic was backing up and, in spite of the BOLO, that he should "flush" the checkpoint by temporarily permitting the traffic to flow through. Another agent, Joel Campa, then established a "high visibility still-watch" by positioning his vehicle in the**

**turnaround lane near mile marker 122 to monitor traffic in search of the BOLO vehicle. (Campa Decl. ¶ 5).**

**To fall outside the discretionary function exception the challenged decision must have no element of judgment or choice. *Elder v. United States*, 312 F.3d 1172, 1177 (10th Cir. 2002). General statements indicating policy goals or even implementation guidelines do not necessarily take agency employee decisions out of the realm of the discretionary exception to the FTCA. *Tippett*, 108 F.3d at 1197; *Shansky v. United States*, 164 F.3d 688, 691 (1st Cir. 1999); *Brotman v. United States*, 111 F. Supp. 2d 418, 424 (S.D.N.Y. 2000). Moreover, the Border Patrol applicable directive expressly provides that the decision as to whether traffic check operations should be terminated rests with the Chief Patrol Agent "based on a conscientious appraisal of the operations." It is difficult to conceive of more discretionary language. *See Elder v. United States*, 312 F.3d at 1177(Court recognized that while program specified "minimum requirements," it also recognized "each area must design its own safety and occupational health effort.") Clearly, the Border Patrol directive gave Senior Agent Contreras discretion on how to operate the checkpoint in response to the BOLO and it was his discretion to "green light" the traffic. Plaintiff fails to offer any evidence that any of the Border Patrol actions were not discretionary, so the first prong is satisfied. *Compare McKinney v. City of Gainesville*, 814 S.W.2d 862, 866 (Tex. Civ. App. 1991) (City's decision not to place barricades along parade route discretionary), *with Sanchez***

***v. Bellefeuille,*** **855 F. Supp. 587, 590 (N.D.N.Y. 1994) (fact issue created when Plaintiff offered engineer's affidavit that checkpoint itself expressly violated Border Patrol Handbook).**

**The second prong of the *Berkovitz* test is whether the action was of a type the statutory exception to sovereign immunity was designed to shield. Senior Agent Contreras indicated at least five policy reasons he decided to operate the checkpoint as he did in response to the BOLO. The most salient policy factors Senior Agent Contreras considered include: (1) existing traffic signs already alerted motorists of the approaching checkpoint; (2) he expected motorists to be aware of obvious obstacles; and (3) he lacked adequate staffing to warn motorists of changing traffic and still operate the checkpoint. (Contreras Decl. ¶ 8).**

**A reasoned agency decision on how to handle an open and obvious risk has generally been held to be within the congressional goal of placing such agency action beyond the second guessing of tort actions. *Tippett, supra*; *Elder, supra*; *Kiehn v. United States,* 984 F.2d 1100, 1103 (10th Cir. 1993); *Zumwalt v. United States,* 928 F.2d 951 (10th Cir. 1991); *Weiss v. United States,* 889 F.2d 937 (10th Cir. 1989). While each of these Tenth Circuit precedents have factual similarities, perhaps the most instructive precedent as to this second element is *Johnson v. United States Department of Interior,* 949 F.2d 332 (10th Cir. 1992). In that case, plaintiff's decedent, Johnson, was mountain climbing in Grand Teton National Park and mistakenly ended up on the wrong descent**

**from Timberline Lake. Johnson fell on a hard snow rock slope sustaining serious head injuries. Decedent's climbing companions were unaware of his exact location and reported his absence to the Park Rangers who decided to wait several hours to see if all the climbers would return to the trail-head. By the time a helicopter search was initiated the next morning, Johnson had died of hypothermia. Plaintiff brought suit under the FTCA alleging the Park Service's negligent failure to (1) adequately regulate climbing in the Park, and (2) initiate and conduct a timely and efficient rescue effort. The Tenth Circuit upheld the district court's summary judgment granted pursuant to the discretionary function exception. With regard to the second prong, the Circuit Court found the regulation of climbing in the Park was exactly the kind of decision that the exception was intended to apply:**

> **We conclude that decisions of, when and how to regulate mountain climbing in Grand Teton National Park go to the essence of the Park Service's judgment in maintaining the Park according to the broad statutory directive. By their very nature, these decisions involve balancing competing policy considerations pertaining to visitor safety, resource availability, and the appropriate degree of governmental interference in recreational activity. The Park Service's actions, insofar as they relate to the regulation of mountain climbing in Grant Teton National Park, are therefore shielded from judicial review by the discretionary function exception.**

**949 F.2d at 337.**

**Affirming the discretionary function dismissal, the Court of Appeals focused on the dangers of judicial interference with agency decisions:**

> **We therefore focus our attention on the second prong of the *Berkovitz* analysis – whether the decision if, when or how to initiate a search or rescue is the kind of decision the discretionary function exception was designed to shield. *Berkovitz*, 486 U.S. at 536. Congress intended that the exception protect from judicial second-guessing only those governmental actions and decisions based on public policy considerations. *Id.* at 536-37. The key to a proper construction of the discretionary function exception thus lies in the determination of whether a governmental decision is "*grounded* in social, economic, and political policy." *Varig*, 467 U.S. at 814 (emphasis added). ...**
>
> **... The nature of the rescue decision process is the critical inquiry: Do Park Service search and rescue decisions simply involve weighing safety considerations under an established program or do they involve the balancing of competing policy considerations?**

**949 F.2d at 338-39. The Tenth Circuit concluded "that the rangers' decision if, when or how to rescue inherently involves the balancing of safety objectives against such practical considerations as staffing, funding and minimizing government intrusion." 949 F.2d at 339.**

**This is just the type of balancing required by the Border Patrol's operation of the checkpoint under the conditions at issue here. How to operate the checkpoint in light of a BOLO alert involves "the balancing of safety objectives against such practical considerations as staffing [and] funding." Indeed, Senior Agent Contreras expressly decided to "not assign any agents to warn approaching motorists of the traffic backup" as he concluded the flush procedure "is the safest, most expedient manner in which to alleviate traffic congestion at the I-10 Checkpoint." (Contreras Decl. ¶ 2). The Court lacks jurisdiction over this dispute and the motion to dismiss must be Granted.**

**ORDER**

**For the above stated reasons, the United States of America's Motion to Dismiss is GRANTED, and this case is DISMISSED.**

**SO ORDERED this 20th day of October, 2009.**

______________________________
**BRUCE D. BLACK**
**United States District Judge**